IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY J. NYBERG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:20-CV-0338-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 7 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits, ECF Nos. 13 and 14.

      The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

> Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///


| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on March 9, 2017. See CAR 19.[1] In the application, Plaintiff claims disability began on March 2, 2017. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on February 14, 2019, before Administrative Law Judge (ALJ) David M. Blume. In a March 7, 2019, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): cervical lumbar degenerative disc disease, depression, and PTSD;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: light work; she can perform occasional postural activities; she cannot climb ladders, ropes, scaffolds, or work around hazards; she can perform simple, repetitive tasks in a non-public setting;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 21-28.

After the Appeals Council declined review on December 10, 2019, this appeal followed.

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate the opinion of examining psychologist, Chester Sunde, Psy.D; and (2) the ALJ failed to properly evaluate the opinions of state agency medical consultants, L. Colsky, M.D., and H. Abrahimi, Psy.D.

///

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on April 28, 2020. See ECF No. 11.

4

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the

opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

At Step 4, the ALJ evaluated the medical opinion evidence to determine Plaintiff's residual functional capacity. See CAR 25-26. The ALJ gave "some weight" to the opinions of state agency consultants, Drs. Chiang and Eskander, who both opined Plaintiff can perform a range of medium work. Id. at 25. The ALJ gave "great weight" to the opinion of Dr. Sunde, who conducted a mental status examination. Id. at 26. The ALJ also gave "great weight" to the opinions of state agency consultants, Drs. Colsky and Abrahimi, who provided opinions as to Plaintiff's mental limitations. Id. Plaintiff challenges the ALJ's analysis as to Drs. Sunde, Colsky, and Abrahimi. Plaintiff raises no argument regarding the ALJ's partial rejection of the opinions offered by Drs. Chiang and Eskander.

As to Drs. Sunde, Colsky, and Abrahimi, the ALJ stated:

> Consultative psychologist Dr. Sunde opined that the claimant could complete simple tasks with mild limitations and complex tasks with moderate limitations. She could interact with others with moderate limitations. She had moderate deficits in her ability to comply with job rules, changes, and maintaining persistence and pace (Ex. 5F).
>
> State agency psychiatric and psychological consultants L. Colsky, M.D., and Heather Abrahimi, Psy.D., agreed with Dr. Sunde and opined the clamant could perform simple work with limited social interaction (Es. 2A, 4A).
>
> These opinions are given great weight because they are generally consistent with each other with only minor differences. Dr. Sunde's opinion was based on direct examination, objective testing, and personal observation. The State agency consultants provided assessments that are consistent with Dr. Sunde's limitations and the previously discussed treatment and findings in the record.

CAR 25.

**A.  Dr. Sunde**

Dr. Sunde's report is contained in the record at Exhibit 5F. See CAR 452-55. Dr. Sunde reported the following history of complaints:

> The claimant states that she had suffered from PTSD for much of her life. She states it started with abuse from her father, who then shot himself in the head with a gun, and she heard the shot. She came out to find out what had happened. She heard and saw him gurgling and dying. She states after that incident, her mother was abusive toward her, her first husband

6

> was abusive toward her, and her ex-boyfriend was abusive toward her, so she suffered a lot of physical and emotional abuse over the years. She states she has had problems with anxiety ever since finding her father. She states she did not finish high school after that incident because of being overwhelmed with anxiety. She used to have severe problems with recurrent nightmares, though they have improved over the years, but the anxiety has stayed. She states she has an exaggerated startle response. She is hypervigilant when she is in public. She gets extremely anxious in public and tends to avoid going places as much as possible. She states that she is depressed most of the time, in general, with a history of severe depressive episodes, but mostly it is in the mild to moderate depression that is there all the time. She gets emotional when she thinks about the past, but she states she currently has a husband that does not abuse her, and that has helped.

CAR 452.

Dr. Sunde reported that, at the time of his evaluation in May 2017, Plaintiff was taking two medications for her mental impairment, Cymbalta and a second drug Plaintiff could not name. See id. at 452. Dr. Sunde noted that Plaintiff's "concentration was impaired throughout the interview" and that persistence was "fair" and pace "slow." Id. at 454. Dr. Sunde rendered the following opinions:

> 1. Plaintiff's ability to remember, understand, and complete simple commands is mildly impaired.
>
> 2. Plaintiff's ability to remember, understand, and complete complex commands is moderately impaired.
>
> 3. Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public is moderately impaired.
>
> 4. Plaintiff's ability to comply with job rules is moderately impaired.
>
> 5. Plaintiff's ability to respond to changes in a normal workplace setting is moderately impaired.
>
> 6. Plaintiff's ability to maintain persistence and pace in a normal workplace setting is moderately impaired.

Id. at 455.

According to Plaintiff, while the ALJ accepted Dr. Sunde's opinion that Plaintiff is moderately limited in her ability to interact with the public, the ALJ erred in failing to provide any rationale for rejecting the doctor's opinion that Plaintiff is moderately limited in her ability to interact with supervisors and co-workers. See ECF No. 13, pgs. 6-7. In opposition, Defendant

argues:

> . . .[T]he ALJ's RFC accounted for Plaintiff's moderate limitations in social functioning, and Plaintiff cannot establish error. *Gann v. Berryhill*, No. 1:17-CV-00325-SKO, 2018 WL 2441581, at *10 (E.D. Cal. May 31, 2018) ("A limitation to simple tasks performed in unskilled work adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors); *Guerrero v. Colvin*, No. 1:15-CV-0962-BAM, 2016 WL 5661722, at *6 (E.D. Cal. Sept. 29, 2016) (limitation to "'simple repetitive tasks' . . . adequately capture[d] Drs. Cushman and Dahl's opinions that Plaintiff has moderate impairments in social functioning") *see also Ramirez v. Comm'r of Soc. Sec.*, No. 1:18-CV-01322-SAB, 2019 WL 4201437, at *18 (E.D. Cal. Sept. 5, 2019) ("any error would be harmless because a limitation to simple and routine tasks adequately encompasses a moderate limitation on social functioning").

ECF No. 14, pgs. 7-8.

The Court agrees with Defendant. Dr. Sunde's moderate limitations in social interactions are adequately encompassed by the ALJ's finding that Plaintiff is limited to simple, repetitive tasks. See Thomas v Barnhart, 278 F.3d 947, 955 (9th Cir. 2002); Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008); see also Rogers v. Comm'r of Soc. Sec., 490 F. App'x 15, 17-18 (9th Cir. 2012); Gann v. Berryhill, 2018 WL 2441581, at *10 (E. Dist. Cal. 2018); Menges v. Berryhill, 2018 WL 1567786, at *8 (E. Dist. Cal. 2018); Messerli v. Berryhill, 2017 WL 3782986, at *11 (E. Dist. Cal. 2017); Henry v. Colvin, 2016 WL 164956, at *18 (E. Dist. Cal. 2016); Langford v. Astrue, 2008 WL 2073951, at *7 (E. Dist. Cal. 2008).

### B. Drs. Colsky and Abrahimi

The opinions of Drs. Colsky and Abrahimi, who reviewed records, are contained in Exhibits 2A and 4A, respectively. See CAR 65-80, 82-100. Dr. Colsky opined, among other things, that Plaintiff is "[c]apable of 1-2 step tasks with minimal social interaction" based on at most moderate limitations. Id. at 78. Dr. Abrahimi opined, among other things, that Plaintiff "is able to. . . interact with co-workers in a non-collaborative and superficial basis" based on at most moderate limitations. Id. at 97. Plaintiff argues the ALJ erred in rejecting these doctors' opinions that Plaintiff is limited to one- to two-step tasks and that she can only interact with co-workers in a non-collaborative setting. See ECF No. 13, pgs. 8-9.

///

1   As to Dr. Colsky, Defendant argues:

2      Dr. Colksy opined that Plaintiff was capable of performing of 1-2
3   step tasks with minimal social interaction (AR 78). Dr. Colsky also opined
    that Plaintiff was capable of performing "LPSRT" (AR 74); and had
4   moderate limitations in carrying out detailed instructions; maintaining
    concentration of extended period; work in coordination with others;
5   complete a normal work week; and interact with peers and the public (AR
    77-78). So although Dr. Colsky stated that Plaintiff could perform the
6   more restrictive 1-2 step tasks, Dr. Colsky also opined that Plaintiff could
    perform the less restrictive simple, repetitive tasks. Since the RFC is the
7   *maximum* capacity, simple repetitive tasks was the most Plaintiff could do
    based on Dr. Colsky's opinion. Accordingly, substantial evidence
8   supported the ALJ's reliance on the maximum capacity contained in Dr.
    Colsky's opinion.

9   ECF No. 14, pg. 9.

10  Here, Dr. Colsky opined that Plaintiff is not significantly limited in her ability to

11  carry out very short and simple instructions. See CAR 77. The doctor also opined that Plaintiff is

12  moderately limited in her ability to carry out detailed instructions. See id. As to Plaintiff's

13  mental residual functional capacity, Dr. Colsky rendered two opinions. She opined both that

14  Plaintiff can engage in "SRT" – simple repetitive tasks – and that Plaintiff could only engage in

15  "1-2 step tasks." See id. at 74, 78. As Defendant correctly notes, residual functional capacity

16  describes the most the claimant can do despite his or her limitations. See 20 C.F.R.

17  §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

18  1985) (residual functional capacity reflects current "physical and mental capabilities"). It is clear

19  that Dr. Colsky opined that the most Plaintiff can do is simple repetitive work, which is precisely

20  the residual functional capacity described by the ALJ. Because the ALJ accounted for Dr.

21  Colsky's opinion as to the most Plaintiff can do, the Court finds no error in the ALJ's analysis.

22  As to Dr. Abrahimi, Defendant asserts:

23      . . .Dr. Abrahimi noted that "[o]verall MER supports SRT with
    LPC which is consistent with Dr. Sunde's [opinion]" (AR 93). Dr.
24  Abrihimi further opined that Plaintiff had no significant limitations in her
    ability to carry out short and simple instructions, but had moderate
25  limitations in carrying out detailed instructions; maintaining concentration
    of extended period; work in coordination with others; complete a normal
26  work week; and interact with peers and the public (AR 96-97). Dr.
    Abrihimi opined that Plaintiff was capable of "understanding,
27  remembering, and sustaining concentration, pace and persistence for
    simple routines thought a normal workday/workweek" (AR 97). SRT is a
28  common abbreviation for simple, repetitive tasks. *See, e.g., Samantha*

*Heather B. v. Saul*, No. 2:19-CV-04917-KES, 2020 WL 1289169, at *7 (C.D. Cal. Mar. 18, 2020). As discussed above, an RFC for simple, repetitive tasks is consistent with moderate limitations, and there is no conflict between the moderate limitations in the opinions of Dr. Abrimi and Dr. Sunde and the RFC finding for simple, repetitive tasks. . *See e.g. Stubbs-Danielson*, 539 F.3d at 1174-1176.

ECF No. 14, pgs. 8-9.

Again, the Court agrees with Defendant.  Here, Plaintiff contends the ALJ erred in accounting for Dr. Abrahimi's opinion that Plaintiff is moderately limited in social interactions. That argument, however, is foreclosed because the ALJ's finding that Plaintiff is limited to simple, repetitive tasks adequately accounts for such limitations.  See Thomas, 278 F.3d at 955; Stubbs-Danielson, 539 F.3d 1169; see also Rogers, 490 F. App'x at 17-18; Gann, 2018 WL 2441581, at *10; Menges, 2018 WL 1567786, at *8; Messerli, 2017 WL 3782986, at *11; Henry, 2016 WL 164956, at *18; Langford, 2008 WL 2073951, at *7.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment, ECF No. 13, is denied;

    2.    Defendant's motion for summary judgment, ECF No. 24, is granted;

    3.    The Commissioner's final decision is affirmed; and

    4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  April 7, 2021

                                          DENNIS M. COTA
                                          UNITED STATES MAGISTRATE JUDGE